# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FERMIN CERVANTES CASTANEDA,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　Defendant. | Case No. 1:17-cv-01654-EPG<br><br>**FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

　　　This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding his application for Disability Insurance Benefits and Supplemental Security Income. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c) with any appeal to the Court of Appeals for the Ninth Circuit. (ECF Nos. 7, 9).

\\\

\\\

1

**A. Analysis**

At a hearing on August 13, 2019, the Court heard from the parties and, having reviewed the record, administrative transcript, the briefs of the parties, and the applicable law, finds as follows:

Plaintiff challenges the decision of the Administrative Law Judge ("ALJ"), on the ground that she improperly rejected the opinion of Plaintiff's treating physician, Dr. Tripodis. The Ninth Circuit has held regarding such opinion testimony:

> The medical opinion of a claimant's treating physician is given "controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2). When a treating physician's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician. *Id.* § 404.1527(c)(2)–(6). "To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (alteration in original) (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (quoting *Bayliss*, 427 F.3d at 1216); *see also Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) ("[The] reasons for rejecting a treating doctor's credible opinion on disability are comparable to those required for rejecting a treating doctor's medical opinion."). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

*Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017). Dr. Tripodis' opinion is contradicted by two medical opinions—one by the consultative psychiatric examining physician, Dr. Sharmin Jahan, and one by a non-examining state agency doctor, Dr. Balson. Thus, this Court examines whether the ALJ provided specific and legitimate reasons supported by substantial evidence for rejecting Dr. Tripodis' opinions.

The ALJ gave the following reasons for the weight given to Dr. Tripodis' opinions:

The undersigned rejects the above-cited September 2015 report from Dr. Tripodis,

> in which he effectively assessed the claimant as disabled from all work activity due to moderate to marked mental deficits in all areas of work-related activities. The undersigned notes this report was completed approximately two years after the claimant's date last insured and is wholly inconsistent with other medical evidence of record and findings of Dr. Jahan and the State Agency. Moreover, this report is also inconsistent with Dr. Tripodis' own reported findings. As noted above, as of July 2015, Dr. Tripodis, cited the claimant as being stable on his medications. (Exhibit B9F).
>
> The undersigned finds the medical findings submitted by Dr. Tripodis do not support a finding that the claimant's mental condition is of disabling severity, nor does Dr. Tripodis provide an assessment of the claimant's mental residual functional capacity, which is compatible with the record as a whole. Dr. Tripodis appear to have taken the claimant's subjective allegations at face value and merely reiterated those allegations in his report when making his assertions regarding the claimant's mental ability to work. However, his assertions are both internally inconsistent with his own reported findings and the other medical evidence of record, and do not appear to take into account the other factors, which must be considered by the undersigned, such as the other medical reports and opinions as well as the vocational factors involved. Accordingly, even though Dr. Tripodis' opinions have been duly considered, in view of the overall record, they are not found to be persuasive or controlling.

(A.R. 32-33).

To begin, the fact that the medical source statement was completed approximately two years after the claimant's date last insured is relevant to its weight, especially given that Mr. Castaneda testified at the hearing that his depression had worsened over time. (A.R. 75).

Regarding the alleged inconsistency with the medical evidence, the ALJ summarized that evidence at length earlier in the decision, such as the following discussion:

> The same lack of medical support applies to the claimant's allegations of disabling depression. While the claimant submitted evidence of presentations to the county mental health department dating back to 2010, he has not required any inpatient psychiatric treatment or participated in regular, consistent outpatient therapy. There also appears to be significant gaps in treatment between 2010 and 2013, with records from and after 2013 frequently referencing the claimant's concerns about successfully pursuing his disability benefits, or seeking related benefits (e.g. a bus pass) rather than expressing significant psychiatric problems or seeking active treatment. Moreover, the claimant has been inconsistent in his symptoms complaints. As of 2010, he complained of auditory hallucinations, but later denied any such problems as of 2013 and 2014 visits to the county mental health department. The claimant generally performed well upon mental status testing

and, in fact, the county mental health department attempted to counsel the claimant on seeking educational or vocational training as an alternative to seeking disability benefits. 2014 and 2015 records from the county mental health department, after the claimant's date last insured, continued to reflect the claimant as denying any problems with psychosis and continuing to perform well upon mental status testing. With the use of prescribed medications, the claimant's condition remained stable and, as of July 2015, the claimant reported feeling well and only expressed issues relating to pursuing his disability application.

(A.R. 32). The Court has reviewed underlying documents, which support the ALJ's conclusions as summarized above. *See, e.g.,* A.R. 519 ("45 y/o HM with MDD stable on his current meds, denies SE, SI, HI, A+OX3, continue with same tx plan, RTC in three months."); A.R. 520 ("Client was casually dressed, polite and cooperative with this clinician. Mood was euthymic and affect congruent. Denied any S/H ideation, mania, hallucinations. Client requested this clinician's assistance with completing a disabled bus pass application. . . Client had no additional needs today and thanked this clinician for assistance.").

Finally, the reason that "Dr. Tripodis appear to have taken the claimant's subjective allegations at face value and merely reiterated those allegations in his report when making his assertions regarding the claimant's mental ability to work" is legitimate in light of the related adverse findings regarding Mr. Castaneda's inconsistent statements. *See,e.g.*, A.R. 33 ("The claimant has submitted no evidence corresponding to his alleged disability onset date and no evidence he requires a cane or other assistive ambulation device. The claimant has also given inconsistent statements regarding his ability to move about and perform daily activities and household chores.").

In conclusion, the Court finds that the reasons given by the ALJ for rejecting the medical source statement of Dr. Tripodis are sufficiently specific and legitimate reasons supported by substantial evidence.

Plaintiff next claims that the ALJ erred in determining Plaintiff's RFC because she failed to provide for limitations in concentration, persistence or pace. Plaintiff points to the ALJ's statement that "[w]ith regard to concentration, persistence or pace, the claimant had moderate difficulties." (A.R. 29).

The Commissioner points to cases finding that moderate limitations do not necessarily

affect a claimant's ability to work. *Hoopai v. Astrue*, 499 F.3d 1071, 1077 (9th Cir. 2007) ("We have not previously held mild or moderate depression to be a sufficiently severe non-exertional limitation that significantly limits a claimant's ability to do work beyond the exertional limitation."); *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173 (9th Cir. 2008) (upholding an RFC limited to "simple, routine, repetitive sedentary work, requiring no interaction with the public" despite medical opinion that claimant was "moderately limited" in her ability to "to perform at a consistent pace without an unreasonable number and length of rest periods"). Here, in light of the ALJ's rejection of Dr. Tripodis' specific limitations and the two physicians' opinions that "the claimant [had] no severe mental impairments and no mental deficits in his ability to perform work tasks," the Court finds no error in the ALJ's RFC notwithstanding the ALJ's comment regarding moderate limitations in concentration, persistence and pace.

Finally, Plaintiff argues that the ALJ erred by failing to pose hypothetical questions to the Vocational Expert (VE) which addressed Mr. Cervantes' illiteracy. The Commissioner argues that literacy is part of a Claimant's assumed education, and not part of an RFC. The Commissioner argues that illiteracy was part of the assumption posed in the question asking the VE to "Assume a hypothetical individual of the same age, education, experience as the claimant . . . ." (A.R. 81). The parties then disagree as to whether the jobs identified by the VE, and adopted by the ALJ, can be done by someone who cannot speak English. The Commissioner argues that the ability to communicate in English would have little significance because the jobs of dining room attendant, hand packager, and machine cleaner are unskilled and concern the handling of things rather than people. (ECF No. 26, at p. 15, citing DOT 311.677-018, 920.587-018, 699.687-014). In contrast, Plaintiff argues that the Dictionary of Occupational Titles states that all three jobs require capabilities of reading, writing and speaking to some extent. (ECF No. 27, at p. 7, citing DOT 311.677-018, 920.587-018, 699.687-014)

The Court believes this issue requires greater clarification from a VE. The ALJ did not clearly specify that the jobs must be done by someone who is illiterate, and it is not clear on the record whether that the VE made that assumption. Nor can the Court determine based on the record whether such error was harmless. It will therefore remand to the ALJ for further

proceedings to determine whether the jobs found by the ALJ can be performed by someone, like Plaintiff, who is illiterate in the English language.

### B. Conclusion

The Court thus remands this case to the ALJ and directs the ALJ upon remand to consider whether a person, like Plaintiff, who is illiterate in the English language can perform jobs that existed in significant numbers in the national economy, including those identified by the ALJ in her opinion at page 35.

Accordingly, the decision of the Commissioner of the Social Security Administration is REVERSED and REMANDED for further administrative proceedings consistent with this opinion.

IT IS SO ORDERED.

Dated: **August 14, 2019**

/s/ Eric P. Group
UNITED STATES MAGISTRATE JUDGE